## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

JOHN VALENTINE,           )
                       )
     Petitioner,      )
                       )     No. 2:18-cv-02430-TLP-tmp
v.                   )
                       )
SHAWN PHILLIPS, NWCX Warden, )
                       )
     Respondent.     )

## ORDER DISMISSING PETITION, DENYING CERTIFICATE OF APPEALABILITY, CERTIFYING THAT AN APPEAL NOT BE TAKEN IN GOOD FAITH, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner John Valentine petitioned pro se under 28 U.S.C. § 2254 for a writ of habeas corpus by a person in state custody ("§ 2254 Petition").[1] (ECF No. 1.) Respondent Shawn Phillips answered the § 2254 Petition, and Petitioner replied. (ECF Nos. 16 & 20.)

The issues Petitioner raises in the habeas petition fall into two categories: (1) whether the claim is procedurally defaulted; and (2) whether the state court identified and applied the correct federal legal principles. For the reasons discussed below, the Court **DISMISSES** the § 2254 petition.

## BACKGROUND

### I.     State Court Procedural History

In March 2013, a Shelby County Criminal Court jury convicted Petitioner of rape of a child and aggravated sexual battery. (ECF No. 15-1 at PageID 135.) The trial court sentenced

---

[1] Petitioner is an inmate at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee. His Tennessee Department of Correction ("TDOC") register number is 123699.

Petitioner to an effective sentence of thirty-three years in prison.  (*Id.* at PageID 151–52.)
Petitioner appealed.  (*Id.* at PageID 164.)  The Tennessee Court of Criminal Appeals ("TCCA")
affirmed and the Tennessee Supreme Court denied permission to appeal.  *State v. Valentine*, No.
W2013-01002-CCA-R3-CD, 2014 WL 4792801 (Tenn. Crim. App. Sept. 25, 2014), *perm. app.
denied* (Tenn. June 20, 2015).

Petitioner then petitioned pro se in Shelby County Criminal Court under the Tennessee
Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-101–22.  (ECF No. 15-13 at PageID
720–35.)  Petitioner amended his petition.  (*Id.* at PageID 739–44.)  The post-conviction court
conducted an evidentiary hearing and denied relief in December 2016.  (*Id.* at PageID 746–50.)
Petitioner appealed that ruling.  (*Id.* at PageID 752.)  The TCCA affirmed.  *Valentine v. State*,
No. W2017-00161-CCA-R3-PC, 2018 WL 360021 (Tenn. Crim. App. Jan. 10, 2018).  Petitioner
did not seek permission to appeal to the Tennessee Supreme Court.

## II.    Federal Court Procedural History

In June 2018, Petitioner filed his § 2254 petition with the Court.  (ECF No. 1 at PageID
15.)  In October 2018, Respondent filed the state court record and an answer to the petition.
(ECF Nos. 15 & 16.)  Petitioner replied in November 2018.  (ECF No. 20.)

### A.    Federal Habeas Issues

Petitioner raises three issues of ineffective assistance in his § 2254 petition:

1.    Trial counsel failed to meaningfully challenge the
      sufficiency of the evidence for the offense of rape of a child
      by penile penetration.  (ECF No. 1 at PageID 5.)

2.    Trial counsel failed to investigate and seek or obtain funding
      for a medical expert in the field of child sexual abuse to rebut
      the State's expert.  (*Id.* at PageID 7.)

> 3.    Trial Counsel failed to raise a double jeopardy challenge to Petitioner's multiple convictions for child rape and aggravated sexual battery.  (*Id.* at PageID 8.)

The TCCA reviewed only Issue 2.  So only that issue has been exhausted.  Next the Court will look at the trial court record including the evidence.

## III.    The Evidence

On direct appeal, the TCCA summarized the evidence presented at Petitioner's trial:

> This case arose from the defendant's convictions for rape of a child and aggravated sexual battery.  According to the proof at trial, the defendant penetrated the victim with his penis and forced the victim to masturbate him.
>
> Audrean Bond–Jones was the principal at Bethel Grove Elementary School in November of 2010, where the victim was a first-grade student.  On November 17, 2010, the victim was brought to Ms. Bond–Jones' office for inappropriate behavior towards another student.  While in line in the cafeteria, the victim was "hunching" on another student.  The victim placed the front part of her body against the back of another student and "would just do a little front back motion."  Ms. Bond–Jones testified that the victim "shared quite a bit of information about some things" that occurred in her home.  When the victim spoke about certain sex acts, Ms. Bond–Jones asked her where she learned about the acts, and the victim "began to demonstrate . . . what her experiences were with her father."  In response to the victim's statements, Ms. Bond–Jones called the Department of Children's Services ("DCS"), and law enforcement officers came to the school.
>
> Marion Woods had been the victim's foster mother since the end of November 2010.  Ms. Woods was a teacher and testified that the victim's performance in school was somewhat deficient.  She indicated that the victim sometimes struggled with the concepts of dates and times, as the victim might say that she was with her mother or sister the previous evening when she actually was with Ms. Woods.  Ms. Woods testified that the victim's accounts of her interactions with the defendant remained consistent.
>
> Angelique Roshea Horace was a foster care counselor with Youth Villages and served as the victim's foster care counselor.  She worked with the victim on developing "social skills[,]" such as communication, listening skills, and "making friends."  Ms. Horace's overall goal with counseling was to assist the victim and Ms. Woods in achieving the victim's permanency goal of adoption.  Ms. Horace testified that when the victim was nervous, she would giggle, place her hands in front of her face, and lower her head.

The victim testified that she was currently ten years old and in the third grade. She stated that her father's name was "[t]ighten up" and that she had seen him when she went to bed on the evening before she spoke with Ms. Bond–Jones. The victim slept in the same room as her mother and the defendant. On the evening of the incident, the victim was asleep in a bed with her mother and the defendant, and she awoke to see the defendant "feeling on" her mother. The defendant then touched the victim's front private part with his penis. He placed his penis inside her front private part and moved "in a circle[,]" and the victim testified that it "[h]urt." The defendant also placed his penis inside the victim's bottom, and the victim testified that "[i]t hurt when it [was] in me." He touched her breast private part, and the victim testified that "[w]hen he touched it, it hurt me. He touched it and I feel [sic] uncomfortable." The defendant told the victim to touch his penis with her hand, and he placed her hand on his penis. The victim demonstrated for the jury how the touching occurred. The victim "told [the defendant] to stop, but he didn't stop." The victim testified that she could feel "pee" come out of the defendant's penis. She stated that the penetration only occurred one time and that it was on the same night that she placed her hand on the defendant's penis. The victim recalled telling Ms. Bond–Jones the next day that her "hand was smell [sic] like pee[,]" and the victim believed it was because her hand was on the defendant's penis.

Mary Daley, a pediatric nurse practitioner, performed a sexual assault examination on the victim. Ms. Daley acknowledged that there was some confusion in her report as to the date of the assault. The victim told Ms. Daley that the assault occurred the night before the exam, but the victim's mother said that the assault occurred the week before the exam. Ms. Daley also wrote on her report that the victim stated that "Daddy stuck his stuff up my booty last night, then he peed on my hands." The victim told Ms. Daley that she got into trouble at school when she "[a]ccidentally freaked" another student. The victim demonstrated to Ms. Daley that "freaking" meant forward pelvic thrusts against another person.

When Ms. Daley examined the victim, she noticed that the victim had "two very, very red deep scratched areas around the perihymeneal area." The tissue around the hymen was very bright red and "extremely tender" during the exam. She stated that there were no tears or abrasions on the hymen itself. She noticed "fairly deep" scratch marks on the victim's external genitalia area. Ms. Daley also observed a bruised area between the victim's "front private and her back private." Several photographs of these injuries were shown to the jury.

The first photograph depicted the victim's external genital area. Ms. Daley identified five scratches on the genital area that she noted as abnormal during the exam. She testified that the scratches were "fairly deep" and had grooves that were deeper than a normal scratch of the skin would be. The second photograph showed the victim's internal genitalia and illustrated a "deep[,] dark grooved area" on the perihymenal band. The third photograph was of the victim's annular hymen, where a darkened area was visible on the right side. The fourth photograph showed

4

several scratches, redness, and part of the hymen wall.  The fifth photograph depicted the scratch marks and the deep red coloration on either side of the hymen and illustrated a small area of bruising.  The sixth photograph again showed the redness around the hymen and showed a darker area.  Ms. Daley opined that the area was darkened due to a bruise.  The seventh photograph showed scratch areas with a "deep bloody looking groove," irritation, and a darkened area.  The eighth photograph showed the victim's anal opening, and Ms. Daley testified that it appeared "normal[,]" as there were no tears or fissures.  The eighth photograph also depicted the area earlier described as bruised and the perineal area.  The ninth photograph showed the victim's anal opening.  Ms. Daley testified that the darkened area was visible, and there appeared to be bruising between her front private and back private.

Ms. Daley classified the victim's injuries as "indeterminate," as "[i]ndeterminate physical examination findings may support the patient's disclosure of abuse."  She testified that "indeterminate" was used to categorize something "not normally seen on a regular, normal, physical exam."  Ms. Daley stated that the scratches and bruises on the victim's perihymeneal area, the small external bruise area, and the small, bruised area directly behind the vaginal area were not normally present during an exam.  She testified that her findings were consistent with the victim's statement that "Daddy put his stuff up my booty," as children do not always understand the concept of a vaginal opening.  She testified that nothing in the victim's physical history indicated that there had ever been any kind of injury in the genital area that would have left the marks that she observed.  She agreed that whether the time frame of the abuse was a day or a week before the exam, her findings were still consistent with the victim's disclosure of abuse.

Letitia Cole was a forensic interviewer with the Memphis Child Advocacy Center who conducted a forensic interview with the victim.  She testified that during the interview, the victim made an "active disclosure" of abuse using both anatomical drawings and anatomical dolls.  She stated that an "active disclosure" was a full disclosure made by a victim during a forensic interview.  A video recording of the victim's interview was then played in open court.

Lieutenant Carl J. Ray was a sergeant in the Memphis Police Department's juvenile squad for sex crimes and child abuse cases at the time of the incident.  He interviewed the defendant, who voluntarily gave a statement after waiving his *Miranda* rights.  The defendant told police that his favorite saying was "tighten up." He stated that the victim's mother placed the victim in bed with her and the defendant.  As the defendant and the victim's mother "got intimate," he asked her, "Why not put [the victim] on a pallet or something[,]" and she replied that the victim would "be alright."  He stated that the victim awoke while he and the victim's mother were "making love" and that the victim's mother was shocked when the victim awoke.  He said that he briefly had sex with the victim's mother but that "she was not into it" because she had cancer and sexual intercourse "burn[ed]" for her.

5

Once the victim's mother told the defendant to stop, he "turned over and lay [sic] behind [the victim's mother] for a little while." The victim then awoke, "stretched her arms out backwards where [the defendant] was at," felt his penis, and "started playing with it." The defendant stated that the victim was "jacking [him] off" while lying in bed with him and her mother. He said he ejaculated after about "five minutes" and that some of the ejaculate landed on him. He was not sure if any landed on the victim. The defendant stated that he had never done anything like that before and that it was the only time he permitted the victim to masturbate him. He did not tell the victim to stop.

The jury found the defendant guilty of rape of a child and aggravated sexual battery. The trial judge sentenced him to an effective term of thirty-three years. The defendant filed a timely notice of appeal, and we proceed to consider his claims.

*State v. Valentine*, 2014 WL 4792801, at *1–4.

Next the TCCA opinion on post-conviction appeal summarized Petitioner's ineffective assistance of counsel claims, the evidence presented at the post-conviction hearing, and the post-conviction trial court's decision:

At the outset of the post-conviction hearing, the petitioner was voir dired by post-conviction counsel. During questioning, the petitioner informed the post-conviction court that he was proceeding with only two of his claims, (1) counsel was ineffective for failing to conduct an independent investigation and (2) counsel was ineffective for failing to have the petitioner evaluated. The petitioner also informed the post-conviction court that he would not be testifying and his only witness would be trial counsel.

Trial counsel, the only witness called during the hearing, testified he represented the petitioner between 2011–2013, taking the petitioner's case from general sessions court and through trial. According to trial counsel, he met with the petitioner several times and reviewed discovery and the State's theory of the case with the petitioner. Furthermore, trial counsel stated that he regularly met with the assistant district attorney (ADA) to discuss the petitioner's case and would then share those discussions with the petitioner. Trial counsel also had two meetings with members of the petitioner's family. When questioned about why he did not seek funds to and hire an investigator, trial counsel explained that, based on his review of the State's case including his meetings with the ADA, he did not think an investigator "would get anywhere" or produce any further information concerning the petitioner's case. Trial counsel was also questioned as to why he did not hire an expert to challenge the testimony of Ms. Daley, the nurse practitioner who examined the victim. In response, trial counsel stated that he did not see the

need for an expert and believed he could cover what he needed during his cross-examination of Ms. Daley.

On cross-examination, trial counsel also explained that he did not have a mental evaluation performed on the petitioner because competency was never an issue. Finally, trial counsel testified he had been practicing criminal law for twelve years and one-hundred percent of his cases were criminal defense in either state or federal court.

After taking the petitioner's claims under advisement, the post-conviction court found the petitioner failed to prove ineffective assistance of counsel and denied relief. This timely appeal followed.

*Valentine v. State*, No. W2017-00161-CCA-R3-PC, 2018 WL 360021, at *3–4.

Now this Court will analyze the claims here.

## LEGAL STANDARDS

For starters, federal courts may issue habeas corpus relief for persons in state custody under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). But a federal court has limited authority and may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

## I.    Exhaustion and Procedural Default

That said, a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Under 28 U.S.C. § 2254(b) and (c), a petitioner must present to the state courts the same claim for which he seeks redress in a federal habeas court. *Id.* That means the petitioner must "fairly present"[2] each claim to all levels of state court

---

[2] To exhaust each claim, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (internal citation omitted). Nor is it

review, including the state's highest court on discretionary review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). But a petitioner need not present to all levels of the state court if the state has explicitly disavowed state supreme court review as an available state remedy. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999).

Tennessee has done that. Indeed, Tennessee Supreme Court Rule 39 eliminated the need to seek review in the Tennessee Supreme Court. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003); *see Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010). Under Rule 39, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies.'" *Id.* (quoting Tenn. Sup. Ct. R. 39); *see also Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010).

There is also a procedural default doctrine much like the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground—such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim—the procedural default doctrine ordinarily bars a petitioner from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977); *see Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment") (internal quotation marks and citation omitted)).[3] In general, a federal court "may only treat a state court order as

---

enough to make a general appeal to a broad constitutional guarantee. *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

[3] The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits. *Walker*, 562 U.S. at 315. A state rule is an

enforcing the procedural default rule when it unambiguously relied on that rule." *Peoples v. Lafler*, 734 F.3d 503, 512 (6th Cir. 2013).

If the procedural default doctrine bars a claim at the state level, the petitioner must show cause to excuse his failure to present the claim. *Schlup v. Delo*, 513 U.S. 298, 320–21 (1995); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). And the petitioner must show (1) actual prejudice stemming from the constitutional violation, or (2) that a failure to review the claim will lead to a fundamental miscarriage of justice. *Schlup*, 513 U.S. at 320–21. In that sense, the petitioner must show that a constitutional error has probably led to the conviction of a person who is innocent of the crime. *Id.* at 321; *see also House v. Bell*, 547 U.S. 518, 536–39 (2006) (restating the ways to overcome procedural default and further explaining the actual innocence exception). With this in mind, the Court now looks to the legal standards for considering the merits of Petitioner's claims.

## II.   Merits Review

Under § 2254(d), where a state court decided a claim on the merits, a court should grant a habeas petition only if resolving the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

"adequate" procedural ground if it is "firmly established and regularly followed." *Id.* at 316 (quoting *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009)). "A discretionary state procedural rule . . . can serve as an adequate ground to bar federal habeas review . . . even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Id.* (quoting *Kindler*, 558 U.S. at 60–61.) (internal quotation marks and citations omitted).

28 U.S.C. § 2254(d)(1)–(2).  Petitioner carries the burden of proof on this "difficult to meet" and "highly deferential [AEDPA] standard," which "demands that state-court decisions be given the benefit of the doubt."  *Cullen*, 563 U.S. at 181 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Under § 2254(d)(1), federal courts limit their review to the record used by the state court to adjudicate the claim on the merits.  *Cullen*, 563 U.S. at 181.  A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).  An "unreasonable application" of federal law occurs when a state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 412–13.  So the state court's application of clearly established federal law must be "objectively unreasonable" for the writ to issue.  *Id.* at 409.  And the habeas court may not issue the writ just because, "in its independent judgment," it determines that the "state court decision applied clearly established federal law erroneously or incorrectly."  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citing *Williams*, 529 U.S. at 411) (internal quotation marks omitted).

There is little case law addressing whether, under § 2254(d)(2), a state court based a decision on "an unreasonable determination of the facts."  In *Wood v. Allen*, the Supreme Court held that a state-court factual determination is not "unreasonable" just because the federal habeas court would have reached a different conclusion.[4]  558 U.S. 90, 301 (2010).  In *Rice v. Collins*,

---

[4] In *Wood*, the Supreme Court granted certiorari to resolve whether, to satisfy § 2254(d)(2), "a petitioner must establish only that the state-court factual determination on which the decision was based was 'unreasonable,' or whether § 2254(e)(1) additionally requires a petitioner to rebut

the Court explained that "[r]easonable minds reviewing the record might disagree" about the

factual finding in question, "but on habeas review that does not suffice to supersede the trial

court's . . . determination."  546 U.S. 333, 341–42 (2006).

　　　The Sixth Circuit has described the § 2254(d)(2) standard as "demanding but not

insatiable" and has emphasized that, under § 2254(e)(1), the federal court presumes that the state

court's factual determination is correct absent clear and convincing evidence to the contrary.

*Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010).  A federal court will not overturn a state

court adjudication on factual grounds unless objectively unreasonable given the evidence

presented during the state court proceeding.  *Id.*; *see also Hudson v. Lafler*, 421 F. App'x 619,

624 (6th Cir. 2011) (same).

## III.    Ineffective Assistance

### A.    Right to Effective Assistance of Counsel

　　　The standards from *Strickland v. Washington* control a claim that ineffective assistance of

counsel has deprived a defendant of his Sixth Amendment right to counsel.  466 U.S. 668, 687

(1984).  To succeed on this claim, a movant must prove two elements: (1) that counsel's

performance was deficient, and (2) "that the deficient performance prejudiced the defense."  *Id.*

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so

undermined the proper functioning of the adversarial process that the trial cannot be relied on as

having produced a just result."  *Id.* at 686.

---

a presumption that the determination was correct with clear and convincing evidence."  *Wood*,
558 U.S. at 299.  The Court found it unnecessary to reach that issue, and left it open "for another
day."  *Id.* at 300–01, 304 (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006) (recognizing that it is
unsettled whether there are some factual disputes to which § 2254(e)(1) does not apply)).

Plus the Sixth Circuit noted recently that this standard is "even more difficult to meet in habeas cases, where the review that applies to *Strickland* claims is 'doubly deferential.'" *Tackett v. Trierweiler*, 956 F.3d 358, 373 (6th Cir. 2020) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Id.* (internal quotation marks and citation omitted).

To prove deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  A court considering a claim of ineffective assistance applies a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance." *Id.* at 689.  The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

To show prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.[5]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  And "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.  Instead, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687; *see also Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) (stating "*Strickland* does not require the State to 'rule out'" a more favorable outcome to prevail, but "places the burden

---

[5] If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient.  *Strickland*, 466 U.S. at 697.

on the defendant, not the State, to show a 'reasonable probability' that the result would have

been different.").  When a petitioner brings a claim in federal court, his burden is even harder to

meet.

A federal court's deference to a state-court decision under 28 U.S.C. § 2254(d) increases

when reviewing an ineffective assistance claim.  Consider this quote from the Supreme Court's

opinion in *Harrington*:

> Establishing that a state court's application of *Strickland* was unreasonable
> under § 2254(d) is all the more difficult.  The standards created by *Strickland* and
> § 2254(d) are both highly deferential, and when the two apply in tandem, review is
> doubly so.  The *Strickland* standard is a general one, so the range of reasonable
> applications is substantial.  Federal habeas courts must guard against the danger of
> equating unreasonableness under *Strickland* with unreasonableness under §
> 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions
> were reasonable.  The question is whether there is any reasonable argument that
> counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted).

**B.      Right to Effective Assistance of Counsel on Appeal**

A criminal defendant is entitled to effective assistance of counsel on direct appeal.  *Evitts

v. Lucey*, 469 U.S. 387, 396 (1985).  But counsel's failure to raise a nonfrivolous issue on appeal

does not constitute per se ineffective assistance.  The Supreme Court has held the "process of

winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far

from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v.

Murray*, 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted).

So courts evaluate claims of ineffective assistance of appellate counsel using the

*Strickland* standards.  *See Smith v. Robbins*, 528 U.S. 259, 285–86 (2000) (applying *Strickland* to

claim that appellate counsel rendered ineffective assistance by failing to file a merits brief);

*Murray*, 477 U.S. at 535–36 (applying *Strickland* to appellate counsel's failure to raise issue on appeal).  This means that, to establish that appellate counsel was ineffective, a prisoner:

> must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal - that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them.  If [the prisoner] succeeds in such a showing, he then has the burden of demonstrating prejudice.  That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

*Robbins*, 528 U.S. at 285 (citation omitted).[6]

For these reasons, it is hard to prove a deficient performance by appellate counsel who chooses to raise one issue on appeal, rather than another.  *See id.*  "In such cases, the petitioner must demonstrate that the issue not presented was clearly stronger than issues that counsel did present."  *Matthews v. Parker*, 651 F.3d 489, 523 (6th Cir. 2011), *rev'd on other grounds*, 567 U.S. 37 (2012).  And the petitioner must also show that "there is a reasonable probability that inclusion of the issue would have changed the result of the appeal."  *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

---

[6] The Sixth Circuit has identified a nonexclusive list of factors to consider when assessing claims of ineffective assistance of appellate counsel:

1.  Were the omitted issues "significant and obvious?"
2.  Was there arguably contrary authority on the omitted issues?
3.  Were the omitted issues clearly stronger than those presented?
4.  Were the omitted issues objected to at trial?
5.  Were the trial court's rulings subject to deference on appeal?
6.  Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7.  What was the appellate counsel's level of experience and expertise?
8.  Did the petitioner and appellate counsel meet and go over possible issues?
9.  Is there evidence that counsel reviewed all the facts?
10. Were the omitted issues dealt with in other assignments of error?
11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Franklin v. Anderson*, 434 F.3d 412, 429 (6th Cir. 2006) (citation omitted).

14

Unlike the direct appeal, in the post-conviction context, there is no right to counsel.  Put differently, when the direct appeal ends, so does the right to counsel.  In *Coleman v. Thompson*, the Supreme Court found that "[t]here is no constitutional right to an attorney in state post-conviction proceedings."  501 U.S. at 752 (citations omitted).  As a result, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."  *Id.*  What is more, attorney error cannot constitute "cause" for a procedural default, "because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error."  *Id.* at 753 (internal quotation marks omitted).  So when the state has no constitutional obligation to ensure that a prisoner has competent counsel, the petitioner bears the risk of attorney error.  *Id.* at 754.

At the same time, however, there is a narrow exception to the rule in *Coleman*.  In *Martinez v. Ryan*, 2012, the Supreme Court considered an Arizona law that did not permit petitioners to raise ineffective assistance claims on direct appeal.  566 U.S. 1, 6 (2012).  The Court held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance [of counsel] at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  *Id.*  The Supreme Court also emphasized that "[t]he rule of *Coleman* governs in all but the limited circumstances recognized here," and "[i]t does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons."  *Id.*

To excuse a procedural default under *Martinez*, a petitioner must show that:

(1) the claim of ineffective assistance of trial counsel was a substantial claim; (2) the cause consisted of there being no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim; and (4) state law *requires* that an  ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding.

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (internal quotations and citations omitted).  And, in *Trevino*, the Supreme Court extended its *Martinez* holding to states which have a "state procedural framework, by reason of its design and operation, [that] makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . . ."  569 U.S. at 429.  Thus, *Trevino* modified the fourth *Martinez* requirement for overcoming a procedural default.  What is more, the Sixth Circuit has found that *Martinez* and *Trevino* apply to Tennessee prisoners.  *Sutton v. Carpenter*, 745 F.3d 787, 790 (6th Cir. 2014).

The Court now considers Petitioner's claims.

## ANALYSIS OF PETITIONER'S CLAIMS

I.    **Issue One: Trial Counsel Failed to Meaningfully Challenge the Sufficiency of the Evidence Supporting Petitioner's Conviction for Rape of a Child**

Petitioner argues that his trial counsel "was constitutionally deficient in failing to mount a meaningful challenge to the sufficiency of the evidence" related to his conviction for rape of a child.  (ECF No. 1 at PageID 5.)  According to the petition, "[t]he medical evidence showed vaginal injuries in the form of 'scratches,' deep red, angry scratches" and "that the victim's hymen was intact, and there were 'no tears or abrasions.'"  (*Id.*)  Petitioner asserts that "the male penis cannot physically cause 'deep red angry scratches' to the vagina."  (*Id.*)  Respondent

argues that the procedural default doctrine bars this claim because Petitioner did not raise it in the post-conviction petition or on appeal.  (ECF No. 16 at PageID 816.)

On direct appeal to the TCCA, Petitioner argued that the state presented insufficient evidence to convict him of rape of a child by penile penetration.  *State v. Valentine*, 2014 WL 4792801, at *5.  Petitioner raised the substance of this claim in the direct appeal.  Addressing the issue, the TCCA explained:

> The defendant next contends that even if the election was sufficient, the evidence is insufficient to support a conviction for the elected offense of rape of a child.  When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after reviewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom."  *State v. Elkins*, 102 S.W.3d 578, 581 (2003).  Therefore, this court will not re-weigh or reevaluate the evidence.  *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).  Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence."  *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).  A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt.  *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992).  The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction.  *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

> Tennessee Code Annotated section 39–13–522(a) provides that "[r]ape of a child is the unlawful sexual penetration of a victim by the defendant . . . if the victim is more than three (3) years of age but less than thirteen (13) years of age."  Viewing the evidence in the light most favorable to the State, the proof at trial showed that the defendant penetrated the victim's vagina with his penis.  The victim testified that the defendant placed his penis inside her front private part.  Ms. Daley examined the victim and testified that she had injuries to her vagina that were consistent with her disclosure of abuse.  The election designated one specific instance of penile/vaginal penetration.  We conclude that the evidence was sufficient to convict the defendant of the elected instance of penile/vaginal penetration.  Accordingly, the defendant is not entitled to any relief as to this claim.

*State v. Valentine*, 2014 WL 4792801, at *5.

Petitioner now reframes the challenge to the sufficiency of the evidence as a claim of ineffective assistance of counsel.  But Petitioner failed to raise this claim in his first post-conviction petition, amended petition, or in the post-conviction appeal.  (ECF No. 15-13 at PageID 720–35, 739–44.)  The procedural default doctrine therefore bars this claim.

Petitioner argues that the Court should excuse the procedural default of this claim because of his post-conviction counsel's ineffective assistance.  (ECF No. 1 at PageID 5.)  Under Sixth Circuit precedent, a Tennessee prisoner seeking federal habeas review can "raise his post-conviction counsel's ineffectiveness as cause for the procedural default of his ineffective-assistance-of-trial-counsel claims." *Sutton*, 745 F.3d at 790.  But the claim still must qualify as "substantial" under *Martinez*, meaning it must have "some merit" based on the controlling standard for ineffective assistance of counsel.  566 U.S. at 14.

Counsel cross-examined the sexual assault nurse about her report and testimony, emphasizing all the normal findings from the exam and the "indeterminate" nature of the findings which she testified "may support the patient's disclosure of abuse."  (ECF No. 15-5 at PageID 435–43.)  Counsel raised the claim on direct appeal that the evidence was insufficient for conviction.  (ECF No. 15-9 at PageID 640, 655–56.)  Petitioner articulates no questions that trial counsel failed to ask at trial that would have changed the trial's outcome.  Petitioner also fails to explain how counsel could have framed the argument on appeal to get his conviction reversed.

Petitioner's argument that the victim's injuries were not caused by a penis is not persuasive here because he has introduced no expert medical testimony or affidavits to support his theory.  Petitioner's speculation and conclusory statements are not evidence and do not establish ineffective assistance of counsel under *Martinez*.  Petitioner has not established a

substantial claim of ineffective assistance.  And so the procedural default doctrine still bars this

claim.  Issue One is **DENIED**.

## II.  Issue Two: Trial Counsel Failed to Investigate and Seek or Obtain Funding for a Medical Expert to Rebut the State's Expert

Petitioner next argues that his trial counsel provided ineffective assistance by "failing to

investigate and seek or obtain funding for medical expert in the field of child sexual abuse to

rebut the State's expert."  (ECF No. 1 at PageID 7.)  Petitioner raised this argument in his post-

conviction appeal.  (ECF No. 15-15 at PageID 780.)  Petitioner contends that, if counsel had

consulted with an expert in child sexual abuse, counsel "could have effectively put forth medical

evidence that the vaginal injuries suffered by the victim could not have been caused by the male

penis."  (ECF No. 1 at PageID 7.)  Petitioner concludes that expert testimony would have shown

"penile/vaginal penetration could not have occurred."  (*Id.*)  Respondent counters that this claim

fails because the TCCA's decision—that Petitioner failed to prove deficient performance by

counsel—was not contrary to *Strickland* or based on an unreasonable determination of the

established facts.  (ECF No. 16 at PageID 818–21.)

First the TCCA correctly identified *Strickland* as the proper federal standard for

analyzing Petitioner's ineffective assistance claim.  *Valentine v. State*, 2018 WL 360021, at \*4.

Then the TCCA rejected that claim, holding:

> As found by the post-conviction court and argued by the State in its brief to this Court, the petitioner failed to offer any proof in support of his claims.  More specifically, the petitioner failed to present a witness that could have offered testimony exonerating him, failed to present an expert to refute the State's medical proof, and failed to present any proof in support of his claim that he was not competent to stand trial.  When a petitioner contends trial counsel failed to discover, interview, or present witnesses in support of his defense, the petitioner must call those witnesses to testify at an evidentiary hearing.  *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).  This is the only way the petitioner can establish that:

> (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of Petitioner.

> *Id.* Even if a petitioner is able to show counsel was deficient in the investigation of the facts or the calling of a known witness, the petitioner is not entitled to post-conviction relief unless he produces a material witness at his post-conviction evidentiary hearing who "could have been found by a reasonable investigation" and "would have testified favorably in support of his defense if called." *Id.* at 758. Without doing this, the petitioner cannot establish the prejudice requirement of the two-prong *Strickland* test. *Id.*

> Here, the petitioner failed to offer any proof in support of his claim that counsel was ineffective. Other than calling trial counsel and questioning him about the decisions he made not to hire an investigator, not to hire an expert, and not to have the petitioner evaluated, the petitioner failed to call a single witness, including himself, to contradict trial counsel's testimony. Thus, even if one were to conclude trial counsel was deficient, the petitioner failed to present any witnesses or evidence showing he was prejudiced by trial counsel's actions, and we will not speculate as to what those witnesses would have said if called to testify at trial. *See Black*, 794 S.W.2d at 757. Accordingly, the petitioner has not established either deficiency or prejudice.

*Valentine v. State*, 2018 WL 360021, at *5–6.

Petitioner fails to explain how the TCCA's decision violated *Strickland*. Nor does he explain how the TCCA based its decision on an unreasonable determination of the facts. And so Petitioner has not satisfied his burden of showing that the decision was objectively unreasonable. Indeed, Petitioner provides no arguments or evidence to refute the presumed correctness of the state court's factual determination. *See* 28 U.S.C. §§ 2254(d)(2), 2254(e)(1).

Petitioner speculates that testimony by an expert in child sexual abuse would have helped his defense. But he provides no supporting expert affidavit, and he did not call an expert witness to testify during the post-conviction hearing. His makes only conclusory allegations here. A defendant's conclusory allegations about the testimony of uncalled witnesses do not show

20

prejudice.  *See Adams v. Jago*, 703 F.2d 978, 981 (6th Cir. 1983) (finding "a defendant has not

been denied effective assistance by erroneous tactical decisions if, at the time, the decisions

would have seemed reasonable to the competent trial attorney") (citations and internal quotation

marks omitted).

Based on this Court's review of the trial transcript (ECF Nos. 15-5 & 15-6) and the post-

conviction hearing transcript (ECF No. 15-14), the TCCA did not base its decision on an

unreasonable determination of the facts.  Counsel chose to cross-examine the "indeterminate"

findings of the state's expert rather than risk retaining an independent expert whose findings

could have damaged Petitioner's case.  Counsel made a strategic decision not to retain an expert

for the defense.  This does not equate to deficient performance.  Issue Two is **DENIED**.

## III.    Issue Three: Trial Counsel Failed to Raise a Double Jeopardy Challenge to Petitioner's Multiple Convictions for Child Rape and Aggravated Sexual Battery

Petitioner argues that trial counsel performed deficiently by failing to challenge his dual

convictions for child rape and aggravated sexual battery.  (ECF No. 1 at PageID 8.)  Petitioner

claims that the dual convictions violate double jeopardy "due to the fact that the crimes were part

of the same act or transaction and aggravated sexual battery is a lesser-included offense . . . of

rape of a child."  (*Id.*)  Respondent argues that the procedural default doctrine bars this claim

because Petitioner did not raise it in the post-conviction proceedings.  (ECF No. 16 at PageID

821–22.)  Petitioner seeks to overcome the default by alleging that post-conviction counsel

performed ineffectively by failing to raise the claim in the post-conviction proceedings.  (ECF

No. 1 at PageID 9.)  To counter that argument, Respondent argues the claim still fails because it

is not substantial.  (ECF No. 16 at PageID 822.)

Rape of a child is defined as the "unlawful sexual penetration of a victim by the

defendant or the defendant by a victim, if the victim is more than three (3) years of age but less

than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." *Id.* § 39-13-501(7).

Aggravated sexual battery, as relevant here, is the "unlawful sexual contact with a victim by the defendant or the defendant by a victim [when] . . . [t]he victim is less than thirteen (13) years of age." *Id.* § 39-13-504(a)(4). "Sexual contact" is "the intentional touching of the victim's, the defendant's, or any other person's intimate parts, . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id.* § 39-13-501(6). Additionally, "'[i]ntimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." *Id.* § 39-13-501(2).

Under Tennessee law, aggravated sexual battery is a lesser included offense of rape of a child. *See State v. Howard*, 504 S.W.3d 260, 274–75 (Tenn. 2016). Petitioner requested that the trial court instruct the jury on lesser included offenses for both charges. (ECF No. 15-1 at PageID 114.) And the trial court instructed the jury on the lesser included offenses, including aggravated sexual battery as a lesser included offense of rape of a child. (ECF No. 15-6 at PageID 525–26.) That court also separately explained the law applicable to each charge. (*Id.* at PageID 527–36.) Finally, the trial court explained to the jury:

> To ensure an unanimous verdict, the law requires the State to elect which alleged act of penetration it is relying upon for your consideration in deciding whether or not the defendant is guilty of the charged offense [rape of a child] of Count One of the Indictment and which alleged act of Sexual Contact it is relying upon for your consideration in deciding whether or not the defendant is guilty of the charged offense of [aggravated sexual battery] of Count Two of the Indictment.

The fact that the Court has required the State's elect does not mean that the Court has found that the State has carried the burden of proving these allegations beyond a reasonable doubt. That is for your determination.

In this case, the State has elected to submit for your consideration of Count One of the Indictment [rape of a child,] the act of penile[sic]/vaginal penetration described by the victim during her testimony as occurring the same night defendant peed on her hand while in the bed with the defendant in her mother's bedroom at the victim's home . . . .

In this case, the State has elected to submit for your consideration of Count Two of the Indictment [aggravated sexual battery,] the act of the victim's hand holding the defendant's penis as testified to and described by the victim as an up and down motion followed by what the victim testified to as defendant peed on her hand while in the bed with the defendant in her mother's bedroom at the victim's home . . . .

(*Id.* at PageID 542–43.) The jury convicted Petitioner of both counts. (ECF No. 15-1 at PageID 135.)

The victim testified that the Petitioner "told [her] to touch his penis . . . got [her] hand, [her] hand was touching his penis." (ECF No. 15-5 at PageID 370–71.) Petitioner did not stop the touching until he ejaculated. (*Id.*) This conduct is enough to support a conviction for aggravated sexual battery. And the TCCA determined before that the evidence was enough to support his conviction for rape of a child because Petitioner "penetrated the victim's vagina with his penis." *State v. Valentine*, 2014 WL 4792801, at *4–5. Petitioner argues that both convictions stem from "only one continuous sexual act." (ECF No. 1-1 at PageID 50.) But the jury convicted Petitioner of aggravated sexual battery on count 2 based on evidence of a separate, discrete act.

According to Petitioner, both acts occurred "without intervening events or repositioning of the Petitioner or the victim." (*Id.*) But he points to no evidence to support this assertion. Indeed, his acts involved contact to different areas of the victim's body. As stated above, the conviction for rape of a child stems from Petitioner penetrating the victim's vagina with his

penis. But the conviction for aggravated sexual battery stems from Petitioner later placing the victim's hand on his penis and moving it back and forth until he ejaculated. Petitioner's convictions stem from two distinct acts. And so the convictions do not violate due process principles.

What is more, because the convictions do not violate double jeopardy, trial counsel did not perform deficiently by failing to raise this issue. Nor did post-conviction counsel. Petitioner has not carried his burden under *Martinez* of establishing a substantial claim. And so Petitioner cannot overcome the procedural default bar of this issue. Issue Three is therefore **DENIED**.

The Court therefore **DISMISSES** the § 2254 petition **WITH PREJUDICE**. The Court will enter judgment for Respondent.

## APPELLATE ISSUES

A petitioner is not always entitled to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003). In fact, the Court has to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). The court may issue a COA only if the petitioner has made a substantial showing of the denial of a constitutional right, and the court has to reflect on the COA the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2)–(3). A petitioner makes a "substantial showing" when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *Henley v. Bell*, 308 F. App'x

989, 990 (6th Cir. 2009) (per curiam) (holding a prisoner must show that reasonable jurists could disagree with the district court's resolution of his constitutional claims or that the issues presented warrant encouragement to proceed even more).

That said, the petitioner need not show that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011) (same). But courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Slack*, 537 U.S. at 337).

Petitioner's claims here lack merit, are noncognizable, and are barred by procedural default. Because any appeal by Petitioner on the issues raised in this petition does not deserve attention, the Court **DENIES** a certificate of appealability.

For the same reasons the Court denies a certificate of appealability, the Court finds that any appeal would not be taken in good faith. Thus, the Court **CERTIFIES** under Federal Rule of Appellate Procedure 24(a) that any appeal here would not be taken in good faith, and also **DENIES** leave to appeal in forma pauperis.[7]

**SO ORDERED**, this 23rd day of September, 2021.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

---

[7] If Petitioner files a notice of appeal, he must pay the full $505 appellate filing fee or move to proceed in forma pauperis and file a supporting affidavit in the Sixth Circuit within thirty days from the date of entry of this order. *See* Fed. R. App. P. 24(a)(5).